**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

JONATHAN ROBINSON, M.D., an
individual,

   Plaintiff,

  v.           Case No.

MAGVATION, INC., a Nevada corporation;  JURY TRIAL DEMANDED
and JASON HOWE, an individual,

   Defendants.

## COMPLAINT

   Plaintiff Jonathan Robinson, M.D. ("Dr. Robinson"), by and through his attorneys, Neal,

Gerber & Eisenberg LLP, for his Complaint against Defendants Magvation, Inc. ("Magvation" or

the "Company") and Jason Howe ("Howe") (collectively "Defendants"), alleges as follows:

## <u>NATURE OF THE CLAIM</u>

   1.  As fully described below, this lawsuit arises out of Defendants' ongoing and

intentional misconduct toward Plaintiff Dr. Robinson, which began nearly two years ago and has

continued through the filing of this Complaint. Defendants' wrongful conduct has included, but is

not limited to, their:

> a) intentional misclassification of Dr. Robinson as an independent contractor and their
> subsequent nonpayment of wages owed to Dr. Robinson for work performed for
> Defendants during his employment in violation of the Fair Labor Standards Act, 29
> U.S.C. § 201 *et seq.* ("FLSA"), and Wisconsin wage-and-hour law. ;
>
> b) breach of their oral contract with Dr. Robinson to pay him a set monthly wage for
> services rendered during his employment or, in the alternative, their unjust retention
> of the benefit of Dr. Robinson's services without due compensation;
>
> c) failure to honor equity grants and/or equity-for-compensation arrangements
> promised and partially implemented in 2023 to Dr. Robinson in lieu of payment of

wages owed to Dr. Robinson for work performed during his employment for Defendants;

d) intentionally false and *per se* defamatory statements concerning Dr. Robinson's work performance, competency and integrity to other Magvation stockholders;

e) wrongful termination of Dr. Robinson's employment in violation of Wisconsin public policy following his complaints regarding possible violations of Food and Drug Administration ("FDA") and investor communication requirements; and

f) purported forfeiture/repurchase/cancellation of certain of Dr. Robinson's holdings of Magvation stock and their continued interference with Dr. Robinson's rights as a Magvation shareholder through their continued exclusion of Dr. Robinson from communications to Magvation shareholders to which he is legally entitled.

2. Dr. Robinson sought to resolve these disputes without the need for litigation, only for Magvation to ignore his demands to be made whole and later repeatedly defame him in communications to other Magvation stockholders. Defendants disseminated certain communications to other stockholders but omitted Robinson from distribution." Defendants' misconduct has caused Dr. Robinson serious injury, which is ongoing and requires Court intervention.

3. In light of the foregoing, Dr. Robinson was forced to bring this action against Defendants Magvation and Howe, given their ongoing misconduct in violation of federal and state law.

## THE PARTIES

4. Dr. Robinson is an adult resident of Waukesha County, Wisconsin. Dr. Robinson is a stockholder of Magvation through his personal stockholdings and through his interest in JRSR Holdings, LLC ("JRSR").

5. Defendant Magvation, Inc. ("Magvation" or the "Company") is a Nevada corporation with its principal place of business located at 300 South 4th Street, 6th Floor, Las Vegas, NV 89101. Magvation is a medical technology company focused on perioperative safety

solutions. It develops and manufactures the "Haystack" surgical needle-counting device and related perioperative innovations.

6. Upon information and belief, Defendant Jason Howe ("Howe") is an adult resident of San Diego County, California. Howe is Magvation's Co-Chief Executive Officer and in this capacity, at all relevant times, has had operational control over Magvation, including paying wages to employees, oversight of pay and employment records and calculating pay due.

## JURISDICTION AND VENUE

7. The Court has original jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").

8. The Court also has diversity jurisdiction over Dr. Robinson's state-law claims pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity between Dr. Robinson and Defendants, and the amount in controversy exceeds $75,000.

9. The Court further has supplemental jurisdiction over Dr. Robinson's state-law claims under 28 U.S.C. § 1367 because those claims are part of the same case or controversy as Dr. Robinson's FLSA and declaratory judgment claims.

10. Venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Dr. Robinson's claims occurred within this district.

11. Further, Defendants are subject to personal jurisdiction in this district, pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Wis. Stat. § 801.05(5), because Dr. Robinson's claims arise out of services, which Defendants knew and authorized Dr. Robinson to perform for Defendants in the state of Wisconsin, as well as from Defendants' promise and failure to pay Dr. Robinson for those

services.

## **FACTUAL BACKGROUND**

### *Dr. Robinson's Employment with Magvation*

12.     Dr. Robinson is licensed in Wisconsin as a physician and surgeon.  In or about early 2023, Howe recruited Dr. Robinson to serve as Magvation's Chief Medical Officer ("CMO").  Magvation  hired Dr. Robinson as its CMO reporting directly to Howe and appointed him as a member of its Board of Directors beginning in early 2023.  Dr. Robinson's CMO duties entailed critical oversight of the development and rollout of Magvation's Haystack device and other product offerings.

13.     Although Defendants misclassified Dr. Robinson as an independent contractor, he was, at all relevant times, an "employee" of Defendants for purposes of the FLSA and Wisconsin wage-and-hour law.

14.     Defendants were at all relevant times, Dr. Robinson's individual and joint "employers" as that term is defined by the FLSA, 29 U.S.C. § 203(d), and Wis. Stats. §§ 103.001 & 104.01.  Defendants jointly benefited from their misclassification of Dr. Robinson.

15.     After a lengthy period of courting by Howe, Defendants hired Dr. Robinson with the understanding that Dr. Robinson would perform his CMO duties remotely from his home in Wisconsin, on a full-time basis.  Defendants further understood that Dr. Robinson's work would entail routine out of state travel and regular communication with individuals based outside of Wisconsin, including other Magvation employees in California, Colorado, Ohio, Minnesota and Nevada and stakeholders throughout the United States.

16.     Specifically, Defendants tasked Dr. Robinson with traveling out of state to partner hospitals to preview and market Magvation's Haystack product to potential customers and

developing the integral workflow analysis for Magvation's Haystack device. Creation of this workflow took Dr. Robinson over a year to develop and entailed dozens of meetings with relevant stakeholders based outside of Wisconsin, including surgeons, nurses, and scrub techs across the country who might utilize the Haystack product, as well as with out-of-state IT programmers responsible for developing the technological functionality of the Haystack product.

17.     Dr. Robinson accepted and continued his role as Chief Medical Officer and Board member in reliance on Defendants' representations that he would receive monetary compensation and equity for his services to the Company, and that his role included responsibility for regulatory oversight, clinical integrity, and investor communications.

18.     In practice, Dr. Robinson's core duties focused on the planned production of the Haystack device and its corresponding workflow development, product marketing, and investor/stakeholder communications. Dr. Robinson's work for Magvation did not entail the practice of medicine and/or any decision making or exercising of independent judgment for patient care. Rather, Defendants' day-to-day control over Dr. Robinson's job duties and responsibilities, and Defendants' pay practices, rendered Dr. Robinson a non-exempt employee.

19.     Further to the foregoing point, Dr. Robinson's role as Magvation's CMO meant that Defendants controlled his work schedule and hours, as well as the projects and deliverables to which Dr. Robinson was assigned including setting deadlines, requiring attendance at standing meetings, assigning deliverables, and directing travel. As a result, Dr. Robinson was unable to perform regular or part-time work as a physician or surgeon, during his employment with Magvation, as Defendants expected Dr. Robinson to devote his full time and attention to Magvation matters. Howe specifically directed Dr. Robinson to cease such outside work in order to focus full-time on his work for Magvation. Dr. Robinson complied with Defendants' directives.

20.    At no point during 2024 – and for substantial portions of 2023 – did Defendants pay Dr. Robinson any fixed salary on a weekly or monthly basis. Defendants exercised unilateral discretion over whether Dr. Robinson would be paid at all, rendering his compensation entirely contingent and inconsistent with payment "on a salary basis" under 29 C.F.R. §541.602 and Wis. Admin. Code § DWD 274.04.

21.    In performing these duties, Plaintiff had no opportunity for profit or loss depending on his managerial skills. Rather, Defendants agreed to pay Dr. Robinson monthly compensation of $25,000, as well as equity grants given Dr. Robinson's CMO role and responsibility for Magvation's regulatory strategy, surgeon engagement, and clinical deployment of Magvation's Haystack device. However, as detailed below, Defendants did not follow through with their commitments to compensate Dr. Robinson for his services.

22.    Indeed, Defendants failed to pay Dr. Robinson a set salary. Rather, Defendants compensated Dr. Robinson on an inconsistent and seemingly random basis, with Defendants opting to withhold any compensation over large, seemingly random, stretches of his employment.

23.    Based on Defendants' representations to Dr. Robinson, Magvation's Board of Directors and potential investors, as well as Dr. Robinson's CMO role, his equity in the business and his service as a member of Magvation's Board of Directors, Dr. Robinson had reason to believe that his employment relationship with Magvation would be ongoing.

24.    Plaintiff did not invest in equipment or materials in an entrepreneurial manner. Rather, Defendants promised to reimburse Plaintiff for any expenses he incurred in the performance of his job duties for Defendants.

25.    Robinson's CMO services were integral to Magvation's core business and not ancillary.

26.     Throughout his employment, Dr. Robinson exceeded Defendants' performance expectations, working diligently to meet tight deadlines.  To meet these deadlines, Dr. Robinson routinely worked more than forty (40) hours a week to develop the Haystack workflow, further the deployment of the Haystack device, and meet with stakeholders to promote and discuss Magvation's Haystack device and its planned functionality, as well as Magvation's other offerings.

27.     Not once during his employment did Defendants raise any concern regarding Dr. Robinson's performance.

***Dr. Robinson's Unpaid Wages and Missing Equity Grants***

28.     In exchange for Dr. Robinson's services, Defendants agreed to pay Dr. Robinson monthly wages of $25,000.  However, it quickly became clear that Defendants had no intention of properly compensating Dr. Robinson.

29.     Shortly after Dr. Robinson began his employment, Defendants claimed that due to liquidity constraints, which Defendants attributed to Magvation's startup status, Defendants would not be able to compensate Dr. Robinson at the agreed rate.

30.     Defendants then requested that Dr. Robinson temporarily agree to accept payment in the form of Magvation stock until Magvation's cash flow improved.

31.     Dr. Robinson reluctantly agreed to accept the majority of his 2023 compensation in equity, receiving only $45,000 in cash compensation for the work he performed in 2023.  The remainder of the wages owed to Dr. Robinson for 2023 were paid in the form of Magvation stock.

32.     However, beginning January 2024, Defendants ceased to compensate Dr. Robinson at all for the work he continued to diligently perform for the business.

33.     As a result, Dr. Robinson is owed back wages for the period beginning January 1, 2024, through the termination of his employment on September 15, 2024.  These unpaid wages

total approximately $212,500 ($25,000/month for approximately 8.5 months).

34.     Moreover, on information and belief, following the termination of Dr. Robinson's employment, Defendants purported to improperly seize certain of the Magvation stock that had previously been awarded to Dr. Robinson for his prior services as CMO and a member of Magvation's Board.

35.     As a result, Magvation's present cap table does not accurately reflect Dr. Robinson's stock holdings in Magvation and, thus far, Dr. Robinson has not been able to determine his exact equity stake in Magvation as Defendants have refused to turn over relevant books and records in response to Dr. Robinson's (and certain other stockholders') lawful and proper demands for the same, which are now the subject of a pending books and records lawsuit in Nevada state court, which is wholly distinct and separate from this employment and tort-based lawsuit.

***Dr. Robinson's Complaints Concerning Defendants' Repeated Misrepresentations to Potential Investors***

36.     During the course of his employment, Dr. Robinson was tasked with overseeing the deployment of the Haystack device, including navigating the FDA approval process, as well as communicating with relevant stakeholders regarding Magvation's products and capabilities.  These stakeholders routinely would contact Dr. Robinson with any questions or concerns regarding the Haystack device and/or the marketing and other materials that Defendants would issue concerning the Haystack device and/or Magvation as a whole.

37.     In order to respond to these questions, Dr. Robinson was expected to be up to speed on all aspects of the Company, including its product offerings, functional capabilities, and marketing materials.  Consequently, Dr. Robinson routinely reviewed the Magvation website as it was the best centralized source of information regarding Magvation and its products/services.

38.     In performing these duties, Dr. Robinson regularly was forced to bring to Howe's

and Magvation's attention concerns about inaccuracies in the materials that Defendants were marketing to potential investors. Dr. Robinson took this responsibility seriously as Magvation's CMO and the individual responsible for promoting the Haystack device to potential stakeholders at medical institutions throughout the United States. As a result, Dr. Robinson understood his CMO role to be responsible for raising uncomfortable truths to the higher ups within the Company to ensure that Magvation stayed on track and did not cross the line with respect to such communications.

39.     Principally, these concerns would be brought to the attention of Howe, who served as the primary and centralized decision-maker for all things Magvation-related. While Howe initially was responsive to, and welcomed, feedback from Dr. Robinson, over time Howe became frustrated and defensive about Dr. Robinson's efforts to constrain what Magvation could and could not say regarding its products in its marketing and other publicly available postings.

40.     In or around August 2024, consistent with his longstanding and regular practice, Dr. Robinson reviewed Magvation's website and, again, identified a number of false/misleading statements concerning the status of Magvation's products and technological offerings, which seriously concerned Dr. Robinson given his CMO role.

41.     Specifically, Dr. Robinson was concerned that the website contained numerous false statements regarding the capabilities of the Haystack device and other listed products/services, which Dr. Robinson believed could potentially jeopardize the then ongoing FDA review (and raised that concern) and approval of the Haystack device and/or constitute a violation of securities laws concerning investor communications given that the website recently had been shared with a group of potential investors.

42.     On September 11, 2024 (after raising these issues verbally in July-August 2024) ,

Dr. Robinson shared his concerns with Howe and other members of Magvation's Board of Directors via email, explaining that Magvation's website misleadingly referenced Magvation's use of "AI" (artificial intelligence), "ML" (machine learning) and "CoBot" (short for "collaborative robot"), despite the fact that Magvation's Haystack device did not then utilize artificial intelligence, machine learning or a collaborative robot. Dr. Robinson further explained that the continued use of these terms on the website was misleading to potential investors and could jeopardize the Haystack device's approval by the FDA.

43.     Dr. Robinson further explained that the website improperly gave the impression that Magvation offered a functional "Haystack Surgical Safety System," with various components listed on the website, including the Hayvibes, Haydoc, Haybeats, and Haytouch functions, which Dr. Robinson noted did not then exist.

44.     Dr. Robinson also flagged a number of incorrect factual statements concerning Magvation's product offerings, which gave website readers the false impression that Magvation's products included referenced features, which were not yet available.

45.     Finally, Dr. Robinson set out in detail numerous other areas on the Magvation website, which required updating for clarity and/or accuracy, including with respect to certain quoted studies and the accuracy of the online bios that had been created for Dr. Robinson and others.

46.     As CMO, Dr. Robinson stressed the need to ensure that the information on Magvation's website was "clear, consistent, and accurate" and reminded recipients regarding prior conversations on this very subject.

47.     Dr. Robinson repeatedly raised concerns internally that Magvation's public-facing statements, investor presentations, and website content contained false, misleading, or unsupported

claims regarding regulatory status, FDA classification, clinical efficacy, and technological capabilities. He warned that such statements exposed the Company and its shareholders to regulatory, civil, and reputational risk and could mislead current and prospective investors.

48.     Dr. Robinson's email was met with resistance from Howe as to the need to take any corrective measures. On information and belief, Defendants have yet to take any action to address the issues raised by Dr. Robinson in his September 11, 2024 email.

49.     Dr. Robinson believed these issues implicated compliance obligations and public policies relating to medical-device regulation and truthful communications to investors and the public. Wisconsin has a strong and well-defined public policy favoring (a) truthful and non-misleading disclosures to investors, (b) compliance with federal healthcare and medical device regulations, including FDA regulatory requirements, and (c) the reporting and correction of false or misleading claims made to the public, investors, or regulators concerning patient safety, regulatory status, or product efficacy.

***Defendants' Termination of Dr. Robinson's Employment and Failure to Pay Wages***

50.     Rather than investigate or remediate these concerns, Defendants responded by marginalizing Dr. Robinson, stripping him of responsibilities, excluding him from communications provided to other shareholders and board members, and ultimately forcing his removal from leadership and termination of his employment.

51.     Further, just days later, on September 15, 2024, without prior notice, Howe contacted Dr. Robinson to inform him that Dr. Robinson's employment with Magvation as CMO had been terminated. Howe further demanded that Dr. Robinson resign from Magvation's Board of Directors and without payment of any final wages. Howe did not provide any explanation or justification for the decision to terminate Dr. Robinson's employment.

52.     The close temporal proximity supports a reasonable inference that the termination was retaliatory due to Dr. Robinson's raising of internal concerns regarding serious public policy concerns and potential violations.

53.     Since terminating Dr. Robinson's employment, Defendants have continued to withhold payment of Dr. Robinson's outstanding unpaid and/or final wages, including wages owed for the period between January 1, 2024 and the September 15, 2024 termination of Dr. Robinson's employment, despite repeated demands for payment.

54.     Instead, Defendants have denied any obligation to compensate Dr. Robinson for the services he provided from January 1, 2024 through September 15, 2024.

***Dr. Robinson's Demand for Payment of Wages***

55.     On September 12, 2025, Dr. Robinson's counsel, Alexis Dominguez, sent Magvation's counsel at Jones Day a written demand for payment of all unpaid wages, as well as a written demand for the production of Dr. Robinson's personnel file.  Magvation did not issue payment of Mr. Dr. Robinson's unpaid wages and/or produce Mr. Dr. Robinson's personnel file.

56.     On September 26, 2025, Magvation's counsel, Elizabeth Dicus, emailed Mr. Dominguez, stating: "We are working with Magvation on the personnel file request and other requests from your letter. I will be in touch with responsive files next week."  Despite these assurances, Magvation produced nothing.

57.     On October 13, 2025, Ms. Dicus again wrote to Mr. Dominguez, representing that Magvation "will produce documents demonstrating [Dr. Robinson's] contractor relationship with Magvation, as well as documents relating to his compensation and equity.  We anticipate providing such documents on a rolling basis this month."  Several months have passed with Magvation producing nothing.

*Defendants' Defamatory Remarks Concerning Dr. Robinson*

58.     Defendants further interfered with Dr. Robinson's rights as a shareholder by excluding him from investor communications provided to other shareholders, selectively withholding financial information, and disseminating misleading narratives to other investors while preventing Dr. Robinson from receiving or responding to those communications.

59.     Following Dr. Robinson's efforts to obtain payment of the unpaid wages owed to him, as well as Dr. Robinson's separate efforts with other Magvation stockholders to gain access to Magvation's books and records, Defendants made numerous *per se* defamatory statements concerning Dr. Robinson in a written advisory circulated to other Magvation shareholders.

60.     Specifically, on November 24, 2025, Howe, in his capacity as Co-CEO for Magvation, issued a Shareholder Advisory to all Magvation shareholders (to the intentional exclusion of Dr. Robinson), copying Magvation's corporate counsel, Jones Day. (Exhibit A.) The Advisory pertained exclusively to Dr. Robinson's efforts to recover unpaid wages and gain access to Magvation's books and records. Indeed, the Advisory directly referenced Dr. Robinson by name no fewer than seven (7) times and indirectly referred to Dr. Robinson throughout. Indeed, based on the derogatory and patently untrue language regarding Dr. Robinson throughout the Advisory, it is clear that Defendants' primary objective in issuing the Advisory was to attack and discredit Dr. Robinson by falsely painting Dr. Robinson in a negative light to other Magvation stockholders.

61.     The defamatory statements set out in the Advisory include Defendants' false assertions that: (1) Dr. Robinson did not perform the work for which he now seeks compensation, (2) Dr. Robinson's emails to other stockholders soliciting support for his books and records demand was "crammed full of complete & utter horseshit," and (3) Dr. Robinson's employment was terminated "for cause." Such statements have no basis in fact, as Defendants are well aware.

62.    In particular, among other statements, the Advisory included the following defamatory statements:

    a.    Howe is "not willing to *buy* someone's reticence by paying for work they never performed," falsely suggesting that Dr. Robinson was not entitled to payment of unpaid wages because he allegedly did not perform work.

    b.    "Magvation has been the subject of false and harmful statements made by three individuals who are neither current employees nor authorized representatives of the company."

    c.    "[T]hese individuals have continued to spout formal assertions that misrepresent the truth — and this time they have done so in a way intended to legally force Magvation into a books-and-records audit under Nevada Revised Statutes § 78.257."

    d.    "[A]n email from Jon Dr. Robinson requesting affidavit signatures for this forced audit … [was] crammed full of complete & utter horseshit."

    e.    "[A]fter reading Jon Dr. Robinson's email soliciting participation in this forced audit …, I am concerned that some shareholders may have been unwittingly hoodwinked."

    f.    "Jon Robbinson [sic] was terminated for cause due to documented performance concerns."

    g.    "He [Dr. Robinson] went straight from being terminated for cause – to demanding severances [sic] I refused – to demanding payment for work he never performed [sic] I refused – to suddenly launching a forced audit campaign without ever identifying a single discrepancy."

63.    Not only were the foregoing statements patently untrue, unprivileged and defamatory *per se*, they were communicated to third parties for the express purpose of harming Dr. Robinson's reputation and standing with other Magvation stockholders and to discourage those stockholders from associating with or dealing with Dr. Robinson.  Indeed, Defendants repeatedly threatened possible legal exposure to stockholders who engaged with Dr. Robinson.

64.    Indeed, if the Advisory had any legitimate purpose, it undoubtedly would have been forwarded to Dr. Robinson, who without question is a Magvation stockholder and thus is entitled to receive all shareholder communications.  That Defendants chose to selectively issue the

Advisory underscores that its true purpose was to impugn Dr. Robinson's competence and integrity both as a physician and a Magvation employee.

65.     On or about December 30, 2025, Magvation convened a shareholder videoconference attended by multiple Magvation shareholders. During that meeting, Defendant Howe referenced Dr. Robinson by name and made statements concerning Robinson's legal claims, motives, and alleged conduct, including statements asserting that Robinson had "fallen for the bait" and that Magvation would prevail in pending books-and-records litigation in Nevada and thereafter pursue Robinson and affiliated shareholders "civilly and criminally," including purported misdemeanor charges.

66.     These statements were made publicly to third-party shareholders, were not limited to factual descriptions of pending litigation, and were made while Dr. Robinson remained a shareholder entitled to accurate and non-misleading communications. Upon information and belief, the statements were recorded and preserved by one or more shareholders.

67.     The statements were *per se* defamatory and have and will continue to cause damage to Dr. Robinson's reputation.

68.     Moreover, Howe's statements confirm that despite Dr. Robinson's work for Defendants during the period January 1, 2024 to September 15, 2024, Howe had made the decision for Magvation to not pay Dr. Robinson the minimum wage, overtime and/or other agreed upon compensation owed to him.

**COUNT I**
**FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(*against Defendants Magvation and Howe*)**

69.     Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

70.     At all relevant times, while working as Defendants' employee, Dr. Robinson was an individual engaged in commerce or the production of goods for commerce, within the meaning of 29 U.S.C. § 207(a)(2) and 29 U.S.C. 203(j).  Among other things, Dr. Robinson regularly traveled for work at Defendants' direction from Wisconsin to California, Colorado, Illinois, Minnesota, Nevada, and Ohio and regularly communicated via email and telephone with other Magvation employees, stakeholders and potential investors based outside of Wisconsin, in furtherance of Defendants' development and planned marketing and sale of Defendants' Haystack device to consumers across the United States.

71.     Defendants have been, and continue to be, employers within the meaning of 29 U.S.C. § 203(d).

72.     Dr. Robinson was an employee of Defendants within the meaning of 29 U.S.C. § 203(e).

73.     The FLSA requires covered employers to compensate all non-exempt employees at a rate of not less than one and one half times their regular rate of pay for work performed in excess of forty hours per workweek.

74.     Dr. Robinson was not exempt from the overtime pay requirements of the FLSA as Defendants failed to pay him a weekly salary. Dr. Robinson was not paid on a salary basis and had no guaranteed weekly compensation; Defendants stopped paying him entirely beginning January 2024.

75.     Dr. Robinson routinely worked in excess of forty (40) hours per week from January 1, 2024 through September 15, 2024.

76.     Defendants did not pay Dr. Robinson overtime premium compensation for work performed in excess of forty hours per week.

77.     The foregoing practice violated the FLSA.

78.     Defendants' violation of the FLSA was willful.

79.     Plaintiff suffered wage losses because of this violation.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendants Magvation and Howe, awarding him back wages, liquidated damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

<u>COUNT II</u>
**FAILURE TO PAY MINIMUM WAGES**
**IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**
(*against Defendants Magvation and Howe*)

80.     Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

81.     At all relevant times, while working as Defendants' employee, Dr. Robinson was an individual engaged in commerce or the production of goods for commerce, within the meaning of 29 U.S.C. § 207(a)(2) and 29 U.S.C. 203(j). Among other things, Dr. Robinson regularly traveled for work at Defendants' direction from Wisconsin to California, Colorado, Illinois, Minnesota, Nevada, and Ohio and regularly communicated via email and telephone with other Magvation employees, stakeholders and potential investors based outside of Wisconsin, in furtherance of Defendants' development and planned marketing and sale of Defendants' Haystack device to consumers across the United States.

82.     Dr. RobinsonDefendants have been, and continue to be, employers within the meaning of 29 U.S.C. § 203(d).

83.     Dr. Robinson was an employee of Defendants within the meaning of 29 U.S.C. § 203(e).

84.     The FLSA requires covered employers to compensate all non-exempt employees at

a rate of not less than $7.25 per hour for each hour worked in each workweek.

85.     Dr. Robinson was not exempt from the minimum wage requirements of the FLSA as Defendants failed to pay him a weekly salary. Dr. Robinson was not paid on a salary basis and had no guaranteed weekly compensation; Defendants stopped paying him entirely beginning January 2024.

86.     Defendants did not pay Dr. Robinson minimum wages for work performed from January 1, 2024 through September 15, 2024.

87.     The foregoing practice violated the FLSA.

88.     Defendants' violation of the FLSA was willful.

89.     Plaintiff suffered wage losses because of this violation.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendants Magvation and Howe, awarding him back wages, liquidated damages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT III
## FAILURE TO PAY OVERTIME WAGES
## IN VIOLATION WISCONSIN LAW
### (*against Defendants Magvation and Howe*)

90.     Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

91.     Defendants have been, and continue to be, an employer within the meaning of Wis. Stats. § 103.001(6).

92.     Dr. Robinson was an employee of Defendants within the meaning of Wis. Stat. § 103.001(5).

93.     Wisconsin law requires employers to compensate all non-exempt employees at a rate of not less than one-and-one-half times their regular rate of pay for work performed in excess

of forty hours per workweek.

94.     Dr. Robinson was not exempt from the overtime pay requirements of Wisconsin law as Defendants failed to pay him a monthly salary or fee.  Dr. Robinson was not paid on a salary basis and had no guaranteed weekly compensation; Defendants stopped paying him entirely beginning January 2024.

95.     Defendants did not pay Dr. Robinson overtime premium compensation for work performed in excess of forty hours per week.

96.     The foregoing practice violates Wisconsin law.

97.     Defendants' violation of Wisconsin law was for dilatory or unjust reasons, including repeated promises to pay and then continued nonpayment despite demand letters.

98.     Dr. Robinson suffered wage loss because of this violation.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendants Magvation and Howe, awarding him back wages, statutory penalties equal to 50% of back wages owed, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT IV
## FAILURE TO PAY MINIMUM WAGES
## IN VIOLATION OF WISCONSIN LAW
### (*against Defendants Magvation and Howe*)

99.     Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

100.    Defendants have been, and continue to be, employers within the meaning of Wis. Stat. § 104.01(3).

101.    Dr. Robinson was an employee of Defendants within the meaning of Wis. Stat. § 104.01(2).

102. Wisconsin law requires employers to pay all non-exempt employees at a rate of not less than $7.25 per hour.

103. Dr. Robinson was not exempt from the minimum pay requirements of Wisconsin law as Defendants failed to pay him a monthly salary or fee. Dr. Robinson was not paid on a salary basis and had no guaranteed weekly compensation; Defendants stopped paying him entirely beginning January 2024.

104. Defendants did not compensate Dr. Robinson at the applicable minimum wage.

105. The foregoing practice violates Wisconsin law.

106. Defendants' violation of Wisconsin law was for dilatory or unjust reasons, including repeated promises to pay and then continued nonpayment despite demand letters.

107. Dr. Robinson suffered wage losses because of this violation.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendants Magvation and Howe, awarding him back wages, statutory penalties equal to 50% of owed back wages, attorneys' fees and costs, and such other relief as the Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT
### (*against Defendant Magvation*)

108. Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

109. Defendant Magvation and Dr. Robinson entered into an oral contract to compensate Dr. Robinson at an agreed upon rate of $25,000 per month as compensation for services provided to Magvation during his employment.

110. Dr. Robinson accepted Defendant Magvation's offer and began working for

Defendant Magvation.

111. Defendant Magvation breached its contract with Dr. Robinson by failing to pay Dr. Robinson the agreed upon monthly compensation for services rendered between January 1, 2024 and September 15, 2024.

112. Dr. Robinson provided the services required by the contract between Defendant Magvation and Dr. Robinson.

113. Dr. Robinson suffered damages because of Defendant Magvation's breach.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendant Magvation, awarding him direct damages in the amount of $212,500, incidental and consequential damages, and such other relief as the Court deems just and proper.

## COUNT VI
## UNJUST ENRICHMENT
### (*against Defendant Magvation in the Alternative*)

114. Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

115. In the alternative, if there was no contract between Dr. Robinson and Defendant Magvation, Dr. Robinson is entitled to payment of promised wages under the doctrine of unjust enrichment.

116. Dr. Robinson conferred upon Defendant Magvation the benefit of his CMO services during the period between January 1, 2024 and September 15, 2024.

117. Defendant Magvation was well aware of the CMO services being provided by Dr. Robinson and the monetary benefit that Magvation derived from those services, including by advancing product development, investor materials, and commercialization efforts.

118. Magvation accepted the benefit of those services, including Dr. Robinson's

development of the workflow analysis for Magvation's Haystack device, which was integral to Magvation's marketing and sale of its products to customers.

119.    It would be unfair for Defendant Magvation to retain the benefit of Dr. Robinson's services without paying Dr. Robinson the agreed upon wage for his services.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendant Magvation, awarding him the value of the benefit conferred upon Magvation for his services, i.e., $212,500, and such other relief as the Court deems just and proper.

<u>COUNT VII</u>
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
(*against Defendant Magvation*)

120.    Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

121.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief based on such judgment.

122.    As described above, since terminating Dr. Robinson's employment, Defendants have been engaged in a campaign to interfere with Dr. Robinson's rights as a holder of Magvation stock, including by (i) issuing intentionally false statements to other stockholders regarding the termination of Dr. Robinson's employment "for cause," and (ii) improperly excluding Dr. Robinson from shareholder communications, disclosures, and financial notices to which he is entitled as a Magvation stockholder.

123.    Dr. Robinson thus faces substantial and imminent risk of future harm and will be injured if Defendants are permitted to continue in this regard.

124.    Injunctive relief is necessary as the recovery of money damages alone would not

protect Dr. Robinson's rights as a Magvation stockholder. Absent injunctive relief, Defendants will continue to disseminate false and misleading statements to shareholders and potential investors, further harming Dr. Robinson's reputation, impairing shareholder decision-making, and frustrating the Court's ability to provide meaningful relief.

125. Defendants' continued dissemination of misleading and threatening communications to shareholders, including statements concerning alleged criminal exposure of Dr. Robinson, creates a substantial likelihood of ongoing irreparable harm to Dr. Robinson's reputation, shareholder rights, and ability to participate meaningfully in Company governance absent declaratory and injunctive relief.

126. Pursuant to the Court's authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Dr. Robinson is a stockholder of record and/or a beneficial owner of Magvation stock through JRSR and is entitled to receive all stockholder communications distributed by Magvation to stockholders generally.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendants Magvation and Howe, declaring that Robinson is a Magvation stockholder (directly and/or through JRSR) and ordering Defendants to provide him the same stockholder communications distributed to stockholders generally, and such other relief as the Court deems just and proper.

## COUNT VIII
## DEFAMATION PER SE
### (*against Defendants Magvation and Howe*)

127. Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

128. Defendants Magvation's and Howe's numerous false statements to third parties

regarding Dr. Robinson as described hereinabove were defamatory and/or slanderous *per se* and were willfully made with the intent to defame the character and reputation of Dr. Robinson in his chosen business profession.

129.     The statements were made as part of a pattern of post-termination false communications regarding Dr. Robinson for the intention of marginalizing him amongst Magvation shareholders and deterring other shareholders from engaging with Dr. Robinson.

130.     Defendants knew these statements were false at the time they were made or acted with reckless disregard for their truth or falsity. Defendants disseminated these statements not for legitimate corporate purposes, but to discredit Dr. Robinson, justify his removal, deter shareholder scrutiny, and chill further inquiry into Defendants' misconduct. Thus, Defendants' defamatory statements regarding Dr. Robinson were either unprivileged or made in abuse of any privilege they may have had.

131.     Defendants' defamatory remarks concerning Dr. Robinson were made for the improper purposes of harming Dr. Robinson's reputation and standing within the community, deterring other Magvation stockholders from associating with or dealing with Dr. Robinson, chilling stockholder questions, skewing investor perceptions and distracting from substantive governance concerns.

132.     These statements were disseminated selectively to certain shareholders, employees, and third parties, while intentionally withheld from Dr. Robinson himself, demonstrating that the communications were not made in good-faith furtherance of a common corporate interest.

133.     Defendants' defamatory statements were not limited to good-faith corporate communications, but included threats of criminal prosecution and personal attacks untethered to

any legitimate business purpose, demonstrating abuse of any claimed common-interest privilege and actual malice.

134. As a direct result, Dr. Robinson has suffered reputational harm within the medical, investor, and professional communities, impairing his standing as a physician, executive, and advisor in the healthcare industry. Magvation shareholders have refused to associate with Dr. Robinson and/or consider him for employment, and Dr. Robinson has suffered personal humiliation, mental anguish and suffering.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Defendants Magvation and Howe, awarding him consequential and punitive damages, costs, and such other relief as the Court deems just and proper.

## COUNT IX
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### (*against Defendant Magvation*)

135. Dr. Robinson repeats and incorporates by reference, as if fully set forth herein, the allegations contained in Paragraphs 1 through 68, as set forth above.

136. At all relevant times, Dr. Robinson was employed by Defendant Magvation as its CMO and served as a member of its Board of Directors.

137. During his employment, Dr. Robinson repeatedly raised good-faith concerns regarding matters implicating fundamental public policies embodied in state and federal law, including:

      a.     compliance with federal medical-device regulatory requirements, including appropriate FDA classification and approval pathways as set forth in 21 C.F.R. § 807 *et seq.*; and

      b.     federal and state laws prohibiting materially false or misleading statements

in connection with securities/investor communications, including Section 12(a)(2) (15 U.S.C. § 77l) of the Securities Act of 1933.

138.     The public policies underlying these statutory and regulatory schemes are well-defined, fundamental, and intended to protect the public from unsafe medical devices, fraudulent securities practices, and deceptive investor disclosures.

139.     Dr. Robinson objected to and refused to participate in Magvation's practices that he reasonably believed violated these public policies, including:

    a.     misrepresentations regarding the regulatory status of Magvation's medical-device products;

    b.     dissemination of materially incomplete or misleading information to investors;

    c.     irregularities in financial reporting and accounting; and

    d.     decisions that endangered patient safety or deviated from FDA-mandated procedures.

140.     Dr. Robinson's objections were made internally, in good faith, and for the purpose of ensuring Magvation's compliance with state and federal law and to prevent harm to investors, healthcare providers, and patients. Dr. Robinson reasonably believed that participating in or acquiescing to such conduct could expose him personally – as a physician, officer and board member – to professional discipline, regulatory enforcement, or civil liability.

141.     Shortly after he raised these concerns, Magvation—acting through CEO Jason Howe and other senior officers—terminated Dr. Robinson's employment and removed him from all leadership positions.

142.     Magvation's termination of Dr. Robinson was motivated by his objections to and

refusal to participate in conduct that violated clearly mandated public policy.

143.     Such a termination violates Wisconsin's narrow public-policy exception to the employment-at-will doctrine, as articulated in *Brockmeyer v. Dun & Bradstreet, Inc.*, 113 Wis. 2d 561 (1983), and its progeny.

144.     Dr. Robinson's discharge undermines these public policies because it punishes internal reporting and discourages compliance oversight in a regulated medical-device enterprise.

145.     As a direct and proximate result of Magvation's wrongful termination, Dr. Robinson has suffered lost wages, lost benefits, lost equity, reputational harm, emotional distress, and other consequential damages.

WHEREFORE, Dr. Robinson respectfully requests that the Court enter judgment in his favor and against Magvation, awarding him backpay, the value of lost equity grants, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## JURY DEMAND

Dr. Robinson respectfully requests a jury trial as to all matters so triable.

Respectfully submitted,

**JONATHAN ROBINSON, M.D.**


By:    /s/ Tonya G. Newman
                             By One of His Attorneys

Tonya G. Newman
tnewman@nge.com
Jonathan S. Quinn
jquinn@nge.com
(*application for admission forthcoming*)
Alexis M. Dominguez
adominguez@nge.com
(*application for admission forthcoming*)
NEAL, GERBER & EISENBERG LLP
225 West Randolph Street
Suite 2800
Chicago, IL  60606-1976
(312) 269-8000

Dated: December 31, 2025

38873823.7